**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

CHAD M.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No: 1:21-cv-682

Barrett, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

**I.   Background**

In October 2021, through counsel, Plaintiff Chad M. filed this Social Security appeal to challenge the Defendant's finding that he was not disabled. *See* 42 U.S.C. §405(g). On March 29, 2022, pursuant to the joint stipulation of the parties, this Court reversed and remanded to the Commissioner for further review by the Social Security Agency. (*See* Docs. 8, 9). Thereafter, Plaintiff's counsel timely filed a motion for an award of attorney's fees under the Equal Access to Justice Act ("EAJA"). (Doc. 10). The Court granted that unopposed motion, awarding counsel the sum of $2,781.80. (Doc. 11).

After remand, an ALJ issued a fully favorable written decision. (Doc. 12-1). The December 23, 2022 decision reflects the ALJ's disapproval of the fee agreement submitted by counsel at that time, because it purported to authorize payment of a fee that was more than "the lesser of" 25 percent of past-due benefits or the maximum fee ($7,200.00) authorized for work performed at the administrative level under 42 U.S.C. § 406(a). (*Id*., PageID 2095).

On December 5, 2023, Plaintiff's counsel filed a motion in this Court seeking an

additional award of $10,000.00 in attorney's fees under 42 U.S.C. §406(b). Because the motion was facially untimely and Plaintiff failed to provide the information necessary for to fully evaluate the request, the Court ordered counsel to supplement her motion with additional information required.

II.     Analysis

### A. The Court's Special Duty to Review § 406(b) Fees

Unlike the EAJA award that was previously paid by the United States, a fee awarded under §406(b) impacts the social security claimant, because it is paid directly out of his benefits award.[1] Here, as is typical for requests that do not financially impact the United States, the Commissioner's response states that it neither supports nor opposes the § 406(b) motion. (Doc. 13). The response further acknowledges that the fee request remains subject to additional judicial review under *Gisbrecht v. Barnhart*, 535 U.S. 789, 122 S. Ct. 1817 (2002) and related Sixth Circuit authority to determine the "reasonableness" of any award. Under that authority, a contingency fee may be reduced if the fee requested would constitute a windfall. *Gisbrecht*, 535 U.S. at 808, citing *Rodriguez v. Sec'y of HHS*, 865 F.2d 739, 746-747 (6th Cir. 1989) (*en banc*).

Published case law from this district explains that an attorney seeking fees under §406(b) "must show, and the Court must affirmatively find, that a contingency fee sought, even one within the 25% cap, is reasonable for the services rendered." *Lowery v. Comm'r of Soc. Sec.*, 940 F. Supp.2d 689, 691 (S.D. Ohio 2013) (*citing Gisbrecht*, 535 U.S. at

---

[1] In order to avoid a duplicate recovery for the same work, an additional fee awarded under § 406(b) requires counsel to repay her prior EAJA fee to Plaintiff. The Contingent Fee Agreement states that counsel's prior receipt of fees under the EAJA will "have the effect of reducing the amount" of fees owed by Plaintiff under § 406(b). Although an EAJA fee is paid by the Commissioner and a § 406(b) fee is paid directly by the Plaintiff, this Court consistently has approved applying the prior EAJA fee as an offset against any additional fee awarded under § 406(b) as a method of balancing the purpose of the EAJA and preserving benefits awarded under the Social Security Act.

807). In *Ringel v. Comm'r*, 295 F. Supp.3d 816 (S.D. Ohio 2018), the Court identified five key "guideposts" used to determine whether a § 406(b) fee request should be approved as reasonable: (1) whether the hourly rate passes the test established in *Hayes v. Sec'y of HHS*, 923 F.2d 418 (6th Cir. 1990); (2) whether the fee has grown inordinately large due to delays in proceedings; (3) the quality and quantity of hours for which compensation is sought; (4) whether counsel has compromised the fee; and (5) whether the Commissioner opposes the award or other unique circumstances apply.

### B. Overcoming Procedural Anomalies

Plaintiff's original motion for fees failed to include either a copy of the contingency fee agreement or any evidence of hours expended in this Court. In addition, it was facially apparent that the § 406(b) motion was untimely. In response to the Court's Order to Show Cause, Plaintiff has filed a copy of the fee agreement and her timesheet. Counsel also argues that the Court should toll the relevant limitations period. While counsel's supplemental filing does not fully respond to the Court's concerns, her supplemental filing is sufficient for the Court to make an award.[2]

In her original motion and again in her supplemental filing in support of her request for a § 406(b) award, counsel seeks fees for "*approximately* 14 hours of time before this Court." (Doc. 12 at 4, PageID 2084; Doc. 15 at 2, PageID 2138 (emphasis added)). In response to the Court's request for some verification of her time, counsel states that she is providing "the timesheet previously sent to Counsel for the Commissioner of SSA in connection with the EAJA fee request and resulting stipulation," which allegedly "confirms" that she spent 14 hours "in connection with the federal court appeal." (Doc 15

---

[2] In addition to pointing out the lack of a fee agreement or evidence of time spent, the Court's Order cited to the *Hayes* test and to *Ringel*'s five guideposts. The Order urged counsel to include "any other relevant information discussed in the cited case law," (Doc. 14 at ¶2), but the supplemental filing does not reference either *Hayes* or *Ringel*.

3

at 2, PageID 2138). The time record includes four entries, totaling 14 hours. It further states that counsel previously requested and was awarded a total of $2,781.80 for those same 14 hours under the EAJA, at an hourly rate of $198.70.

Strangely, however, half the entries (representing 11.5 of the 14 hours) do not track any proceedings in this Court. The Court takes no issue with the first and second entries, dated 10/26/21 (the date this case was filed) and 12/8/21 (the date counsel states she reviewed the administrative record). But the third entry reflects 7.5 hours expended on **July 15, 2020** – more than a year before the case in this Court was filed - for "start[ing]" a draft of the brief on the merits. And the fourth entry attests that counsel waited a full year - until **July 20, 2021** – a date that also is before this case was filed - to "[f]inish and submit" the brief on the merits in this Court.

In contrast to those anomalous dates, this Court's record reflects that Plaintiff filed a 20-page "Statement of Specific Errors" on her client's behalf in this Court on March 10, 2022. (Doc. 6). Soon thereafter on March 29, 2022, Defendant filed a joint Stipulation to Remand, and on April 14, 2022, the Commissioner stipulated to a joint agreement reflecting a "compromise" agreement to award $2,781.80 in EAJA fees.[3] The EAJA fee stipulation makes no reference to the number of hours for which counsel is being compensated. Thus, the Court is left to wonder: (1) was this in fact the same timesheet previously submitted to the Commissioner prior to the parties' compromise of the EAJA fee? (2) if not, where is the correct timesheet? (3) are the reported hours accurate, despite the clearly incorrect dates? or (4) is the timesheet simply a poorly drafted reconstruction based on counsel's "approximate" estimation of her time? Considering that counsel

---

[3] The two joint stipulations were filed by the Commissioner but reflect that Plaintiff's counsel gave permission to electronically sign on her behalf.

undoubtedly spent *some* hours drafting a 20-page memorandum that persuaded the Commissioner to remand, counsel's consistent representation that she spent "approximately 14 hours" before this Court, and the previously stipulated EAJA award, the undersigned finds 14 hours to be a fair and reasonable estimate of the time expended, regardless of the anomalies noted on the timesheet.

Turning next to the Contingency Fee Agreement, the Court observes yet another incongruity. This case was opened on October 26, 2021, and remanded on April 1, 2022. (Doc. 8). Yet the Contingency Fee Agreement is dated September 1, 2022 – six months *after* the above-captioned case was concluded. But because the Agreement was signed while proceedings were ongoing at the administrative level and its terms are clear and unambiguous concerning counsel's entitlement to up to 25% of past-due benefits based on work performed in this Court,[4] the undersigned does not further question the timing of its execution.

Finally, the Court turns to the timeliness of counsel's § 406(b) motion. As stated, the motion is untimely under Local Rule 54.2(b)(2). Since 2016, the local rule has required motions seeking fees under 42 U.S.C. § 406(b) to be filed "no later than forty-five days after entry of judgment or the date shown on the face of the social security certificate award (notice of award), whichever is later." In this case, the Notice of Award was not issued until September 30, 2023. Since the Notice of Award was the later date,[5] it is the operative date for the 45-day limitations period. While that limitations period may be extended for good cause, counsel never moved to extend time in this case. Instead,

---

[4]It is unclear whether the fee agreement was the same agreement rejected by the ALJ in December 2022 on grounds that it authorized excessive fees for work performed at the administrative level.
[5]The delay between the issuance of the ALJ's favorable decision in December 2022 and the date of the Notice of Award nine months later is not explained. However, the Notice states that it is being generated "in response to [Plaintiff's] inquiry with the Office of U.S. Representative Brad Wenstrup." (Doc. 12-3, PageID 2116).

5

counsel simply filed her motion three weeks past the deadline.

Prior to the enactment of LR 54.2(b), most courts held that the time frame for filing a motion for fees under § 406(b) was governed by an even shorter 14-day period under Rule 54(d)(2), Fed. R. Civ. P. To avoid harsh results, courts frequently applied equitable tolling to extend the time period to a "reasonable" period of time. *See, e.g., Walker v. Astrue,* 593 F.3d 274, 276 (3rd Cir. 2010); *Bergen v. Commissioner of Soc. Sec.,* 454 F.3d 1273, 1277 (11th Cir. 2006); *Pierce v. Barnhart*, 440 F. 3d 657, 663 (5th Cir. 2006). The adoption of LR 54.2(b) does not preclude the application of equitable tolling in an appropriate case.

In response to the Court's request for clarification about the timeliness of her motion, counsel explains that she filed a petition under 42 U.S.C. § 406(a) for work at the administrative level on October 16, 2023, and did not receive the ALJ's decision authorizing payment for that work until November 17, 2023. She now seeks equitable tolling by this Court on grounds that she "promptly" filed her motion under 42 U.S.C. § 406(b) "18 days after she received confirmation on the amount she was permitted to charge for the administrative work." (Doc. 15 at 3, PageID 2139). But counsel's reasoning provides little support for equitable tolling in federal court. It has long been settled law that an award under § 406(a) by the administrative agency has no bearing on the entirely separate award made by a federal court under § 406(b). Additionally, even if counsel mistakenly believed that one type of fee award had any bearing on the other, she fails to explain her failure to seek any extension of the deadline for filing her motion in this Court.

Nevertheless, in the interests of justice, the Court will apply equitable tolling and consider the motion as if timely filed. The Fee Agreement expresses a clear intent to compensate counsel with a contingency award for the excellent results achieved in this

6

Court, and the motion was untimely by a matter of weeks, not months. That said, counsel is forewarned that she should not expect the Court to overlook noncompliance with LR 54.2(b) in the future, and should take care to either timely file any future motions or to seek an extension of the 45-day period if necessary.

### C. Confirming the Fee is Reasonable

Having determined that Plaintiff has adequately overcome procedural barriers to an award, the Court turns to the substance of counsel's motion, using the five guideposts set forth in *Ringel*. On the record presented, the first of those guideposts – an elegantly simple mathematical formula established nearly a quarter century ago – is dispositive.

#### 1. The *Hayes* Test

In *Hayes v. Sec'y of HHS*, 923 F.2d 418 (6th Cir. 1990), the Sixth Circuit established that "a hypothetical hourly rate that is less than twice the standard rate is *per se* reasonable." *Id.*, 923 F.2d at 422. In other words, if a contingency fee is authorized by a fee contract that does not exceed the statutory maximum fee of 25%, and if the total fee further falls below the *Hayes* "floor," then a reviewing court has satisfied its duty to ensure the fee is reasonable. A hypothetical hourly rate that equals or exceeds twice counsel's "standard rate" still may be "reasonable," but requires additional judicial review. *Id.* In short, application of the *Hayes* test is always the first step, and sometimes the last.

To calculate whether the fee falls below the *Hayes* floor in this case, the total fee of $10,000.00 is divided by 14 hours. That equation yields a hypothetical hourly rate of $714.29. To determine whether that hypothetical rate is more than twice counsel's standard rate, the Court need only ascertain counsel's "standard rate."

Ahh, but there's the rub. Counsel represents that based on her 26 years of post-law school experience, her typical fee in social security cases for work performed at the

7

administrative level is $380.00 per hour. (Doc. 15, PageID 2138). And the documentation that counsel submitted with her initial motion confirms that the Commissioner compensated counsel at $380.00 per hour for work that she performed at the administrative level pursuant to 42 U.S.C. §406(a). But counsel also admits that the prior EAJA fee award that she received compensated her at the much lower hourly rate of $198.70.

The rate of $714.29 is less than twice the rate that counsel recovered for her work under 42 U.S.C. § 406(a), but more than twice the rate she recovered under the EAJA. Which rate should be considered to be counsel's "standard rate"? If the higher § 406(a) rate is used, counsel's § 406(b) fee is "per se reasonable." But if the lower EAJA rate is used, then this Court must proceed to review additional guideposts to determine whether the fee is reasonable or whether it constitutes a windfall.

*Ringel* settles the question. "[T]he EAJA-based 'standard rate' has been sufficiently established in the Southern District of Ohio to be entitled to presumptive weight under *Hayes* <u>in the absence of evidence of counsel's normal billing rate for comparable, noncontingent work</u>." *Id*., 295 F.3d at 831 (emphasis added); *see also id*. at 830 (discussing impropriety of using bar association rates and prior Sixth Circuit approval of EAJA rate as a proxy for the "standard rate" in cases in which no better evidence exists). Here, counsel has effectively rebutted the presumption that the lower EAJA rate should be used as proxy for her "standard rate" because the record contains undisputed evidence that her "standard rate" in social security cases is $380.00 per hour. The Commissioner's payment of that rate under §406(a) is clearly more probative of counsel's "standard rate" than the lower hourly rate paid as part of a "compromise" stipulated EAJA

fee. In short, the requested fee is "per se reasonable" under the *Hayes* test, with no need for further analysis

### 2. Brief Review of Other Guideposts

Although no further analysis is necessary, it is worth noting that the fee also would be deemed to be reasonable under all remaining *Ringel* guideposts. After applying *Hayes*, the Court considers whether a contingent fee award has grown inordinately large due to administrative or judicial delays. When the wheels of justice turn with unusual slowness, it increases the possibility that "the corresponding contingent fee will be 'unearned' and unreasonable solely because of the length of time that benefits have accrued." *Ringel*, 295 F.Supp.3d at 835. Here, the Notice of Award provides for benefits beginning August 2018 – a period spanning five years. While a four-year benefit period is presumptively reasonable, "a contingent fee based on a past-due benefits award that reflects a period longer than four years … invites a closer look." *Ringel*, 295 F.Supp.3d at 836. In *Ringel*, that "closer look" resulted in a reduction of the contingency fee because the benefits period spanned more than a *decade*, including more than three years of delay after remand. In addition to constituting half the benefits period at issue in *Ringel*, the Notice of Award here was issued less than 18 months after remand. Moreover, one year's worth of past-due benefits was based on the lag time between the onset of disability and the filing date of Plaintiff's application. (*See* Doc. 4-2, PageID 28). Counsel should not have her fee reduced when part of the reason for the large award is not based on administrative or judicial delays, but on a delay by Plaintiff in filing for benefits.

Examining the quantity of hours and quality of counsel's work further confirms the reasonableness of the fee. The total of 14 hours is appropriately modest for a case that resulted in the Commissioner's agreement to remand. *See*, *e.g.*, *Ringel*, 295 F. Supp.3d

9

at 836 (noting the "vast majority of social security cases reflect a very standardized number of attorney hours, typically between 10 and 40 hour, with most …falling near the midpoint of a 12–30 hour range).

Next, the Court considers that counsel seeks only 54.1% of the maximum 25% of past-due benefits award that is permissible under § 406(b), and has further reduced her fee below the amount to which the parties agreed.[6] After she subtracted out the payment she received under § 406(a), counsel voluntarily compromised her fee by subtracting another $1,970.61. *See generally*, *Ringel*, 295 F. Supp. 3d at 838-840 (voluntary compromise of fee supports reasonableness). Finally, the Commissioner does not oppose the fee and no other unique circumstances apply. *See id*. at 841.

### III. Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT:**

1. Plaintiff's motion for an additional award of attorney fees under 42 U.S.C. §406(b) (Doc. 12) should be **GRANTED**, subject to the following conditions:

   a. The award of $10,000.00 shall be offset by the sum of $2,781.80 previously paid to counsel for the same work under the EAJA. Therefore, the total award under 42 U.S.C. § 406(b) payable to counsel equals **$7,218.20**;

   b. Plaintiff's counsel should be reminded of her future obligation to fully comply with Local Rule 54.2 when seeking attorney's fees in social security cases in this district.

                                                       s/Stephanie K. Bowman
                                                       Stephanie K. Bowman
                                                       United States Magistrate Judge

---

[6] The express terms of the Fee Agreement appear to preclude counsel from retaining the § 406(a) fee on top of the 25% contingency fee authorized under § 406(b). (*See* Doc. 15-1, PageID 2150). While benefitting Plaintiff, those terms are not required by the statute. *See generally Culbertson v. Berryhill*, 139 S. Ct. 517, 523 (2019) (holding that 25% statutory cap "applies only to fees for court representation, and not to the aggregate fees awarded under §§ 406(a) and (b).")

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

CHAD M.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No: 1:21-cv-682

Barrett, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).